# NO. 12-08-00446-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LUIS MIGUEL TREJO* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *DISTRICT COURT OF* |
| *THE STATE OF TEXAS* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Luis Miguel Trejo appeals his conviction for aggravated sexual assault of a child, for which he was sentenced to imprisonment for life. In one issue, Appellant argues that the evidence is factually insufficient to support the trial court's judgment. We affirm.

### BACKGROUND

Appellant was charged by indictment with aggravated sexual assault of a child. Specifically, the indictment alleged that Appellant "intentionally or knowingly caused the penetration of the sexual organ of [H.B.] … a child who was then and there younger than 14 years of age and not the spouse of [Appellant], by [Appellant's] sexual organ…." Appellant pleaded "not guilty," and the matter proceeded to a jury trial.

The testimony at trial reflects that, on or about the evening of October 6, 2007, Appellant was at his residence with his infant son and two stepchildren, one of whom was eight year old H.B. His girlfriend, L.D.,[1] was at work. According to H.B.'s testimony, later that evening, Appellant, who had been drinking, removed her clothes, threw her on the bed, and put his

---

[1] L.D. lived with Appellant and the three children at the residence. L.D. is the mother of each of the three children. Appellant is the father of the youngest child. Appellant is not the father of the older children. However, at trial, H.B. referred to Appellant as her stepfather.

1

"privates" into her "privates."  H.B. further testified that Appellant quickly stopped when he saw blood coming out of her "private part."  H.B. stated that Appellant told her to take a bath and attempted to conceal the blood stain on the bedspread with a black marker.  H.B. further stated that Appellant told her that if she revealed to anyone what had happened, he would kill her and L.D.

When L.D. returned, she and Appellant argued about the fact that he had been drinking. Appellant left the residence and went to his mother's house.  Thereafter, L.D. noticed that H.B. was bleeding between her legs and called 9-1-1.  Police and emergency medical personnel were dispatched to the residence.  H.B. was ultimately transported to Dallas to receive appropriate medical care for her injuries.  Police later apprehended Appellant at his mother's house.

Following the presentation of evidence and argument of counsel, the jury found Appellant "guilty" as charged.  A bench trial on punishment was conducted, after which the trial court sentenced Appellant to imprisonment for life.  This appeal followed.

## FACTUAL SUFFICIENCY

In his sole issue, Appellant argues that the evidence is factually insufficient to support the trial court's judgment.  Specifically, Appellant contends the evidence is factually insufficient because the record reflects that the DPS crime lab found no presence of his DNA on the victim or in any of the items tested at the crime lab.

When an appellant raises a contention that the evidence is not factually sufficient to support the trial court's judgment, we must first assume that the evidence is legally sufficient under the *Jackson*[2] standard.  *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We then consider all of the evidence weighed by the factfinder that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  We do not view the evidence "in the light most favorable to the prosecution." *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Instead, we look at all evidence in a neutral light and will reverse only if (1) the evidence is so weak that the finding seems clearly wrong and manifestly unjust or (2) considering conflicting evidence, the finding, though legally sufficient, is nevertheless against

---

[2] *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

the great weight and preponderance of the evidence. *See Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). In our review, we must consider the evidence that the appellant claims most undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). We cannot declare that a conflict in the evidence justifies a new trial simply because we may disagree with the factfinder's resolution of that conflict. *See Watson*, 204 S.W.3d at 417. Nor can we conclude a finding is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted differently had we been the factfinder. *See id.* Rather, before ordering a new trial, we must first be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict. *See id.*

In the instant case, Appellant urges us to adopt his position that when "DNA findings do not support the accusations of the victim, then the connection of the Appellant to the crime must not be made." Yet, it is beyond contention that the uncorroborated testimony of a sexual assault victim alone is sufficient to support a conviction for aggravated sexual assault of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (Vernon 2005); *Cagle v. State*, 976 S.W.2d 879, 880 (Tex. App.–Tyler 1998, no pet.); *see also Grays v. State*, No. 4-07-00742-CR, 2008 WL 2746078, at *3 (Tex. App.–Houston [14th Dist.] 2008, pet. ref'd) (mem op., not designated for publication). H.B.'s testimony that Appellant inserted his "privates" into her "privates" and threatened to kill her and L.D. if she told anyone about it was clear and compelling. The fact that no physical evidence specifically linking Appellant to the aggravated sexual assault of H.B. was recovered from H.B. or the scene does not necessarily serve to contradict H.B.'s testimony. Indeed, multiple witnesses testified regarding the likelihood of recovering DNA evidence after a victim has bathed. One witness described the likelihood of recovering such evidence as "decreased" while another described it as "very slim." From this evidence, the jury could have reasonably concluded that any DNA evidence left by Appellant was washed away while H.B. bathed.

We have reviewed the record in its entirety. Having done so, we cannot conclude that the great weight and preponderance of the evidence contradicts the verdict or that the jury's finding of "guilty" is "clearly wrong" or "manifestly unjust." Therefore, we hold that the evidence is factually sufficient to support the trial court's judgment. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment**.**

**SAM GRIFFITH**
Justice

Opinion delivered March 24, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)